UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JEREMY TURNER,

                              Petitioner,

        v.

RENEE BAKER, et al.,

                              Respondents.

Case No. 3:17-cv-00139-MMD-WGC

ORDER

## I.    INTRODUCTION

This action is a petition for writ of habeas corpus by Jeremy Turner, an individual incarcerated at Nevada's Lovelock Correctional Center. Respondents have filed an answer to Turner's amended petition, and the case is before the Court for adjudication of Turner's claims. The Court will deny the amended petition and deny Turner a certificate of appealability.

## II.   BACKGROUND

In an order in Turner's state habeas action, the district court described the murder that is the subject of this case, as follows:

> On August 31, 2010, Mr. Turner was with his sister, Jamie Hulsey, and her husband, Ronald Hulsey, at the Hulsey residence. The group was joined by friends—Carolyn Faircloth, her boyfriend John Clymer, and her son Carl Roberts—for a barbecue. Everyone drank heavily. At approximately 7:00 p.m., Mr. Turner and Mr. Roberts became involved in a dispute, a punch was thrown, and a violent physical altercation erupted involving all adults present. Mr. Turner and Mr. Hulsey attacked Mr. Roberts, repeatedly kicking him about his head and body. Ms. Faircloth and Ms. Hulsey fought with each other, punching each other in the face. After beating Mr. Roberts, Mr. Turner allegedly came upon the two women, grabbed Ms. Faircloth by the hair, and punched her in the head. Mr. Hulsey then kicked Ms. Faircloth in the head while she lay on the ground.

///

Mr. Clymer found Ms. Faircloth without a pulse. A neighbor called 911, and Ms. Faircloth was pronounced dead upon arrival at the hospital. Mr. Roberts was beaten so severely his face was unrecognizable. Mr. Turner fled the scene with Ms. Hulsey and her minor children before officers responded, but he was later apprehended at the Gold Dust West casino. He was transported to the Sheriff's office and gave a statement. He told officers he did not like Mr. Roberts because he was African American. He also stated he did not remember hitting Ms. Faircloth. (ECF No. 14-5 at 2–3 (Order filed June 9, 2014 (citations to trial transcript omitted)).) Following a jury trial in Nevada's Second Judicial District Court (Washoe County), Turner was convicted on November 17, 2011, of second degree murder and battery causing substantial bodily harm, and he was sentenced to life in prison with the possibility of parole after ten years, and a consecutive term of two to five years in prison. (*See* ECF No. 21-10 (Judgment of Conviction).) The Nevada Supreme Court affirmed the judgment of conviction on January 16, 2013. (*See* ECF No. 13-25 (Order of Affirmance).)

Turner filed a petition for writ of habeas corpus in the state district court on December 13, 2013. (*See* ECF No. 13-29 (Petition for Writ of Habeas Corpus (Post-Conviction).) The court held an evidentiary hearing (*see* ECF No. 14-10 (Transcript of Evidentiary Hearing)), and then denied Turner's petition on September 14, 2015 (*see* ECF No. 14-12 (Order Denying Post-Conviction Relief).) Turner appealed, and the Nevada Supreme Court affirmed on February 16, 2017. (*See* ECF No. 14-25 (Order of Affirmance).)

Turner submitted his original *pro se* federal habeas corpus petition for filing, initiating this action, on March 6, 2017. (ECF No. 6.) Respondents filed a motion to dismiss on June 5, 2017. (ECF No. 10.) That motion was rendered moot, and was denied on that ground, on October 17, 2017, when the Court granted Turner's motion to amend his petition. (ECF No. 26.) Turner filed his amended habeas petition, which is now his operative petition, on December 18, 2017. (ECF Nos. 27, 27-1.) The Court reads Turner's amended petition to include the following claims:

Ground 1A: Turner's federal constitutional rights were violated because his trial counsel was ineffective because he "conceded to a fist strike upon the victim."

Ground 1B: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing "to have the jury properly instructed on aiding and abetting, and/or specific intent," and because his appellate counsel was ineffective for failing to raise the issue on his direct appeal.

Ground 1C: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to file a motion to sever his trial from

the trial of his co-defendant, and because his appellate counsel was ineffective for failing to raise the issue on his direct appeal.

Ground 1D: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to file a motion for a mistrial based on jury misconduct, and because his appellate counsel was ineffective for failing to raise the issue on his direct appeal.

Ground 1E: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to file a motion to suppress his statements to law enforcement.

Ground 1F: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to meaningfully cross-examine prosecution witnesses.

Ground 1G: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to investigate and prepare for the testimony of prosecution witnesses.

Ground 1H: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to prepare for his sentencing hearing.

Ground 1I: Turner's federal constitutional rights were violated because his trial counsel was ineffective for failing to object, or "argue against" the restitution order imposed as part of his sentence.

Ground 1J: Turner's federal constitutional rights were violated because his appellate counsel failed to raise the following issues on his direct appeal:

> (i)  the jury instructions regarding aiding and abetting, and/or specific intent;

> (ii)  juror misconduct;

> (iii)  cruel and unusual punishment;

> (iv)  insufficiency of the evidence;

> (v)  the restitution order;

> (vi) cumulative error.

Ground 1K: Turner's federal constitutional rights were violated because of the cumulative errors of his trial counsel.

Ground 2: Turner's federal constitutional rights were violated because there was insufficient evidence to prove that he acted with the malice necessary for the crime of second degree murder.

Ground 3: Turner's federal constitutional rights were violated as a result of the cumulative effect of the errors he alleges.

Ground 4: Turner "is entitled to habeas relief for [the] reason [that] he is actually and/or factually innocent of the second degree murder charge."

(*See* ECF No. 27.)

On March 21, 2018, Respondents filed a motion to dismiss Turner's amended petition (ECF No. 29), arguing that all his claims are unexhausted in state court, and that some are not cognizable in this federal habeas corpus action. The Court ruled on that motion, granting it in part and denying it in part, on August 20, 2018. (ECF No. 34.) The Court dismissed: the claim of ineffective assistance of appellate counsel in Ground 1C; the claim of ineffective assistance of appellate counsel in Ground 1D; and Grounds 1J(ii), 1J(iii) and 1J(iv). In all other respects, the Court denied Respondents' motion to dismiss.

Respondents filed an answer on March 21, 2019. (ECF No. 53.) Turner filed replies on July 23 and August 26, 2019. (ECF Nos. 57, 59.) Respondents filed a response to Turner's replies on September 18, 2019. (ECF No. 60.)

## III. DISCUSSION

### A. Procedural Default

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731–32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Id.* at 488. For cause to exist, the external impediment must have

prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Id.* at 15 (citing *Coleman*, 501 U.S. at 746–47). The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

## B.    Standard of Review of Merits of Claims

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on its merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an

unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. *See Williams v. Taylor*, 529 U.S. 362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id.* at 409–10; *see also Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

With respect to a claim that the state courts did not address on its merits—for example a claim procedurally barred in state court on which the petitioner can overcome the procedural default by showing cause and prejudice—the federal habeas court reviews such a claim *de novo*, rather than under the deferential AEDPA standard. *See*, *e.g.*, *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) ("When it is clear . . . that the state court has not decided an issue, we review that question *de novo*.").

## C.    Ground 1A

In Ground 1A, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective because he "conceded to a fist strike upon the victim." (*See* ECF No. 27 at 3, 9, 19–26 (Amended Petition).)

Turner asserted this claim in his state-court habeas petition. (*See* ECF No. 13-29 at 6–7, 15–18 (Petition for Writ of Habeas Corpus).) The state district court held an evidentiary hearing, at which evidence was presented regarding this claim. (*See* Order (ECF No. 14-5 at 5, 19–20) (Order); ECF No. 14-10 (Transcript of Evidentiary Hearing).) Following the evidentiary hearing, the state district court denied Turner relief. (*See* ECF No. 14-12 (Order Denying Post-Conviction Relief).) Turner raised the issue of the denial of this claim on the appeal from the denial of his state habeas petition. (*See* ECF No. 14-

21 at 27–44 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed. (*See* ECF No. 14-25 (Order of Affirmance).)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court prescribed a two-part test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

After the state-court evidentiary hearing, at which Turner and his trial counsel, John Springgate, and others, testified (*see* ECF No. 14-10) (Transcript of Evidentiary Hearing)), the state district court made the following findings relative to this claim:

> 1. Ms. Faircloth died from a combination of violent blows to her head. No single blow was identified as the death blow. Trial evidence demonstrated that Mr. Turner's co-defendant, Mr. Ronald Hulsey, was the person who kicked Ms. Faircloth in the head. However, Mr. Clymer, Mr. Steen, and Mr. Hulsey told the police and/or testified that Mr. Turner struck Ms. Faircloth on the head with his fist. This strike occurred during or immediately after Ms. Faircloth's fight with Mr. Turner's sister, Jamie Hulsey. Ms. Bailey's testimony directly implicated Mr. Turner based upon words that can only be ascribed to Mr. Turner. Mr. Turner's own statements to the police were equivocal, as were the statements of Ms. Hulsey.

> 2. After discussing trial and defense strategies with Mr. Turner, Mr. Springgate made the tactical decision to concede that Mr. Turner struck Ms. Faircloth one time on the head. Mr. Springgate sought to neutralize the State's compelling evidence of Mr. Turner's participation during its case-in-

chief. The defense theory was that Mr. Turner only committed misdemeanor battery, possibly in defense of his sister, which unfortunately resulted in Ms. Faircloth's death. Thus, Messrs. Turner and Springgate hoped for manslaughter instead of a conviction for murder in the first or second degree. Mr. Springgate's testimony about his trial strategies and consultations with Mr. Turner was credible and specific.

3.    Mr. Springgate made the strategic decision to concede a trial fact that exposed Mr. Turner to a lesser crime. The Nevada Supreme Court has examined the concession of guilt strategy and concluded that it is no different than any other strategy defense might employ at trial. *Armenta-Carpio v. State*, 129 Nev. [531], 306 P.3d 395, 398 (2013). This strategy does not constitute a waiver that requires a court canvass to ensure the defendant's knowing and voluntary consent. *Id.* (overruling *Hernandez v. State*, 124 Nev. 978, 194 P.3d 1235 (2008)).

*   *   *

7.    . . . Mr. Turner and Ms. Hulsey both testified that Mr. Turner never struck Ms. Faircloth. Their testimony was self-serving. When measured against the trial evidence, which was filtered through the adversarial process of cross-examination, the post-conviction evidence was unpersuasive.

*   *   *

1.    Mr. Springgate was a credible witness. He effectively tested the State's case through the adversarial process. He communicated with Mr. Turner and made appropriate strategic decisions. Mr. Turner failed to demonstrate how Mr. Springgate's representation fell below an objective standard of reasonableness. To the contrary, this Court is persuaded that Mr. Springgate was highly effective. Mr. Springgate's efforts did result in a lesser conviction than the State sought when it began trial. Even if Mr. Springgate failed to perform an objectively reasonable task, there is no preponderant showing of prejudice. The dispositive problem for Mr. Turner is that Mr. Springgate could neither create nor change the underlying facts.

(ECF No. 14-12 at 3–6 (Order Denying Post-Conviction Relief).) On the appeal in the

state habeas action, the Nevada Supreme Court ruled as follows:

Turner first argues that trial counsel should not have conceded without his consent that he punched the decedent Carolyn Faircloth. A concession of guilt may be a reasonable trial strategy when circumstances dictate. *Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395, 398 (2013). The district court found that three witnesses told police that Turner struck Faircloth, that a witness overheard one of Faircloth's assailants tell her that she should not have attacked "his sister" where Turner was the only person present with a sister involved in the fight, and that Turner equivocally told police that he could not recall whether he hit Faircloth. On this basis, the district court concluded that trial counsel made a reasonable tactical decision to concede the strike and argue that it did not cause Faircloth's death or, alternatively, that Turner's defense of another warranted a lesser manslaughter conviction. Substantial evidence supports the district court's factual findings, and we conclude that Turner has not shown that the district court's findings are not entitled to deference or that counsel's tactical

decision was not objectively reasonable under the circumstances. *See Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) ("[T]rial counsel's strategic or tactical decisions will be virtually unchallengeable [absent] extraordinary circumstances." (quotation marks and citation omitted)). The district court therefore did not err in denying this claim.[1]

 Second, Turner argues that trial counsel should have conducted a more thorough investigation by hearing Turner's version of events before conceding that Turner struck Faircloth. In two police interviews within a day of the incident, however, Turner asserted that he could not remember if he had hit Faircloth. The district court found self-serving and unpersuasive Turner's evidentiary hearing testimony that he would have told trial counsel that he did not hit Faircloth. Turner has not shown that this finding is not entitled to deference or that his denial would have led counsel to use a different strategy or to a different outcome at trial when Turner was equivocal on the strike shortly after the incident and his later denial was found to be unpersuasive. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Accordingly, we conclude that Turner has not shown that trial counsel was ineffective and thus that the district court did not err in denying this claim.

(ECF No. 14-25 at 3–4 (Order of Affirmance).)

 The Court has examined the trial transcript, the transcript of the evidentiary hearing held in the state district court, and the entire record in this case, and determines that the Nevada Supreme Court's ruling on this claim was reasonable. Evidence presented at the state-court evidentiary hearing showed that the concession that Turner struck Faircloth was a matter of strategy, and there is no showing that counsel's strategic decision in that regard was made based on insufficient investigation or that it was otherwise unreasonable. And, at any rate, given the strong evidence that Turner did in fact strike Faircloth, Turner makes no showing that he was prejudiced by the concession.

 There was strong evidence presented at trial indicating that Turner struck Faircloth. John Clymer, who was a friend of Turner and Ronald Hulsey, who had been Faircloth's

///

///
_____

[1]To the extent that Turner claims that the concession strategy amounted to ineffective assistance because he was actually innocent, the evidence he enlists as support belies this conclusion: his codefendant's appellate filings inculpate rather than exculpate him, *see Hulsey v. State*, Docket No. 59725 (Appellant's Opening Brief, May 31, 2012); J. Hulsey told police that she closed her eyes and did not know whether Turner hit Faircloth; and G.H. told police that Turner thought he had killed Faircloth immediately after the fight when J. Hulsey drove them away from the scene as police approached. Further, S. Merritt testified that Turner told her on the night of the incident that he had beaten two people to a pulp and that they needed resuscitation.

boyfriend for several years before her death, and who witnessed the beatings of Faircloth

and her son, Carl Roberts, testified as follows:

> Q.    And as the defendants go in the direction of Ms. Hulsey and Ms. Faircloth, then describe what you see next.
>
> A.    I seen Jay, Mr. Turner, grab Carolyn by her hair and jerk her away, kind of, and punch her in the face, and tell her, 'Don't be hitting on my sister, bitch.' And that knocked Carolyn down.
>
> Q.    Now, when you say "down," what do you see?
>
> A.    Knocked her down to the ground.
>
> Q.    Then what do you see next?
>
> A.    Then I was – the reason I was turned around was to see if they was coming back to beat on us some more. And that's when I seen Jay hit Carol. And then I turned back around and got Ron – I got Carl turned over, and got up to go help Carolyn; that's when she was on the ground. When I turned around, that's when I seen Mr. Hulsey kick her in the face. And then he went in the house. They all went in the house.
>
> Q.    Describe – when you say you saw Ron Hulsey kick Carolyn, how does he kick her?
>
> A.    Like a drop-kick.

(ECF No. 12-10 at 53–54 (Transcript of Trial, September 7, 2011); *see also id.* at 57

("Grabbed her by the hair and socked her."); *id.* at 147 (reiterating on cross-examination

that he saw Turner strike Faircloth); *id.* at 156 (stating that he told the police that he saw

Turner strike Faircloth).)

Frances Bailey, who lived down the street from the residence where the crimes

occurred, and who observed the fighting from a distance, testified as follows about what

she heard during the incident:

> Q.    . . . And then did you hear a male voice?
>
> A.    I also heard a male voice yelling, "You want to hit my sister?" Just calling somebody a lot of names, and saying, "You want to hit my sister –" that basically, this is what's going to happen to you.
>
> Q.    Now I know we're in court, but I would like you to, as best you can remember, tell us what you heard, even if it involves some profanity or bad words.
>
> A.    "Nigger-lover" was what they kept yelling over and over again.

(ECF No. 12-10 at 273 (Transcript of Trial, September 7, 2011).) Turner was the only person with a sister at the scene, and there was strong evidence that Turner was motivated by racial animus; therefore, the evidence firmly supported the inference that it was Turner whose voice Bailey heard.

Detective Joe Bowen testified that he interviewed Turner twice, once at approximately 2:00 a.m. on September 1, 2010, that is, during the night after the incident, and once during the early afternoon on September 1, 2010. (*See* ECF No. 12-12 at 71, 85 (Transcript of Trial, September 9, 2011).) Detective Bowen testified that Turner told him that he punched Roberts and kicked him in the face more than once. (ECF No. 12-12 at 75–76, 85–86, 102–04.) Detective Bowen also testified as follows:

> Q.     Did Mr. Turner express, during the interview, whether there was one particular person that he was trying to engage or fight with?
>
> A.     Yes. He stated that he wanted to fight with Carl Roberts.
>
> Q.     Did he express a reason – or basically any reason why he wanted to go after Carl Roberts?
>
> A.     Yes. He stated that it was because of Carl's ethnicity of being black.
>
> Q.     And do you recall, as close as you can, the words he used to describe – express that feeling or idea?
>
> A.     Yes. He stated that he is straight-up White Pride, and he's the little white boy that hates all niggers.
>
> Q.     And that was the word that he used in the interview?
>
> A.     Yes.

(ECF No. 12-12 at 76–77.) Detective Bowen testified further:

> Q.     And in the first interview, did Mr. Turner indicate that he didn't remember whether he had hit Ms. Faircloth or not?
>
> A.     Yes.
>
> Q.     Did you ask him whether it was possible that he had?
>
> A.     Yes, I did ask him that.
>
> Q.     And how did he respond to that?

A.    He stated that, "Yes, it was possible."

Q.    So he acknowledged that it was possible that he had done so?

A.    Yes.

Q.    Did he also say, "But he didn't think so? But he didn't remember?"

A.    Yes.

*    *    *

Q.    . . . You talked about, in the second interview, whether Mr. Turner had struck Carolyn Faircloth?

A.    Yes.

Q.    Did he tell you, in the second interview, that he didn't remember?

A.    Yes.

Q.    Did you ask him, in the second interview, whether it was possible that he had?

A.    Yes.

Q.    Did he acknowledge the possibility?

A.    Yes.

(ECF No. 12-12 at 101–02.)

In addition, Sonita Merritt, a friend of Turner's who was with him during the night following the incident after he fled the scene, testified that Turner told her that he had beaten two people "to a pulp, to where they had to call the EMTs, they had to resuscitate them and call the EMTs to be picked up." (*See* ECF No. 12-11 at 119–20 (Transcript of Trial, September 8, 2011).)

In view of the evidence, the state court could reasonably have concluded that Turner's trial counsel made a reasonable strategic decision to concede that Turner struck Faircloth, with a view toward attempting to convince the jury that Turner's actions amounted to manslaughter rather than murder.

///

///

12

Furthermore, in view of the evidence, particularly the evidence described above, it was reasonable for the state court to conclude that, at any rate, Turner was not prejudiced by the concession that he struck Faircloth.

Turner was charged with open murder—including the possibility of first-degree murder. (*See* ECF No. 11-2 (Criminal Complaint); ECF No. 11-19 (Information). While his defense did not succeed in obtaining a manslaughter conviction rather than a murder conviction, it did succeed in avoiding a first-degree murder conviction. Turner's trial counsel testified as follows at the evidentiary hearing:

> I think in the context of the trial, what we succeeded in doing was convincing Mr. Prengaman [the prosecutor] that it was, at worst, a second-degree case. And he changed, in closing arguments, and requested a second-degree verdict. Whereas from the start of the case, he had been requesting first-degree. And as a result, the jury apparently followed that, as opposed to my argument for manslaughter, and only convicted of second-degree.

(ECF No. 14-10 at 69–70 (Transcript of Evidentiary Hearing); *see also* ECF No. 14-12 at 6) ("[T]his Court is persuaded that Mr. Springgate was highly effective. Mr. Springgate's efforts did result in a lesser conviction than the State sought when it began trial.").)

Turner claims, and testified at the evidentiary hearing, that he did not authorize his trial counsel to concede that he struck Faircloth. (*See* ECF No. 27 at 3, 9, 19–26 (Amended Petition); ECF No. 14-10 at 102–15 (Transcript of Evidentiary Hearing).) In *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), the Supreme Court held that a defendant has a Sixth Amendment right to control whether or not his counsel admits guilt "even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty . . .. [I]t is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt." *Id.* at 1505. Under *McCoy*, if counsel concedes guilt contrary to the defendant's express wish to maintain his innocence, the *Strickland* two-part analysis does not apply; the error is structural, and reversal is required

///

without the need to show actual prejudice. *Id.* at 1510–11. *McCoy* does not, however, help Turner with this claim in this federal habeas corpus action.

*McCoy* was not yet decided when the Nevada Supreme Court ruled on Turner's claim on February 16, 2017. Under 28 U.S.C. § 2254(d)(1), federal habeas courts are to "measure state-court decisions 'against [the Supreme Court's] precedents as of '*the time the state court renders its decision.*'" *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation omitted) (emphasis in original)). Applying 28 U.S.C. § 2254(d)(1), this Court cannot find the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, Supreme Court precedent that did not exist when the Nevada Supreme Court ruled. When the Nevada Supreme Court ruled in Turner's state habeas action, the law was that the *Strickland* analysis applied to a claim that counsel conceded guilt without the assent of the client. *See Florida v. Nixon*, 543 U.S. 175, 178–79 (2004) (counsel's failure to obtain the defendant's consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient).

Furthermore, at the evidentiary hearing Turner's trial counsel testified that he spoke with Turner about the strategy of conceding that Turner struck Faircloth, and attempting to convince the jury that this was a manslaughter case rather than a murder case, and Turner did not object to that strategy. (*See* ECF No. 14-10 at 56–57, 64–66 (Transcript of Evidentiary Hearing).) The state court could reasonably have found counsel's testimony to be credible, and Turner's testimony to the contrary to be less so.

Affording the state-court ruling the deference mandated by 28 U.S.C. § 2254(d), this Court determines that habeas corpus relief is not warranted on this claim. The Nevada Supreme Court's ruling was not an unreasonable application of *Strickland*, or any other United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Turner habeas corpus relief on Ground 1A.

///

## D.    Grounds 1B and 1J(i)

In Ground 1B, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing "to have the jury properly instructed on aiding and abetting, and/or specific intent," and because his appellate counsel was ineffective for failing to raise the issue of the aiding-and-abetting instruction on his direct appeal. (*See* ECF No. 27 at 3, 9, 27–32 (Amended Petition).) In Ground 1J(i), Turner repeats his claim that his appellate counsel was ineffective for failing to raise the issue of the aiding-and-abetting instruction on his direct appeal. (*See id.* at 3, 11, 59–64.)

The jury instruction that is the subject of these claims was as follows:

> Every person concerned in the commission of a crime, whether the person directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a crime, is liable for the commission of the crime.

> First Degree Murder is a specific intent crime. A person may be liable for the commission of First Degree Murder as an aider or abettor only if he aids or abets in the commission of the crime with the specific intent that the victim be killed. Second Degree Murder, Voluntary and Involuntary Manslaughter, and Battery Causing Substantial Bodily Harm are all general intent crimes.

> In the case of general intent crimes, aiders and abettors are criminally responsible for all harms that are a natural, probable, and foreseeable result of their actions. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him.

(ECF No. 12-15 at 32 (Instruction No. 28).)

In his state habeas action, Turner claimed that this jury instruction was improper and that both his trial and appellate counsel were ineffective for failing to ensure that the jury was properly instructed and that the issue was raised on his direct appeal. (*See* ECF No. 13-29 at 7, 18–20 (Petition for Writ of Habeas Corpus).) The state district court dismissed those claims, ruling as follows:

> The failure of counsel to object to an incorrect jury instruction may constitute ineffective assistance of counsel. *See Nika v. State*, 124 Nev. 1272, 1290, 198 P.3d 839, 851 (2008). Mr. Turner relies on *Sharma v.*

15

*State*, 118 Nev. 648, 652–55, 56 P.3d 868, 870–72 (2002), to argue the aiding and abetting instruction was incorrect because it did not inform the jury that the State had to prove he had specific intent to kill. However, under *Sharma*, an aider and abettor must be shown to have had specific intent to kill only when the murder crime he or she is charged with is a specific intent crime. *Sharma*, 118 Nev. at 655, 56 P.3d at 872 (involving defendant convicted of attempted murder as an aider and abettor). Second degree murder is a general intent crime, though, and *Sharma* does not apply. Intent to kill need not be proven in order to convict a defendant of second degree murder as an aider and abettor.

Mr. Turner also relies on *Bolden v. State*, 121 Nev. 908, 124 P.3d 191 (2005), to argue that to convict a defendant of a general intent crime as an aider and abettor, the State must prove the crime being charged was a reasonably foreseeable consequence of the defendant's aiding the principal. He argues the jury was not so instructed, but this is exactly what is stated in Instruction 28.

(ECF No. 14-5 at 6 (Order).) On the appeal in his state habeas action, Turner argued that the district court erred in dismissing these claims, among others. (*See* ECF No. 14-21 at 63–67 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed, ruling as follows with respect to these claims:

. . . Turner argues that the district court erred in dismissing several of his claims without an evidentiary hearing. Turner fails to identify specific claims that would have entitled him to relief and specific reasons why they were improvidently denied. As he has not presented relevant authority and cogent argument supporting this claim, we decline to address it. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

. . . Turner claims that appellate counsel should have challenged the aiding-and-abetting jury instruction because it permitted the jury to find him guilty without specific intent and argued that there was insufficient evidence that he had the specific intent to kill. Although the challenged "natural and probable consequences" language is improper when the crime aided and abetted is a specific-intent crime, *Sharma v. State*, 118 Nev. 648, 654, 56 P.3d 868, 871–72 (2002), second-degree murder is a general-intent crime, *Hancock v. State*, 80 Nev. 581, 583, 397 P.2d 181, 182 (1964), and therefore the instruction properly referenced the "natural and probable consequences" doctrine in relation to second-degree murder. [Footnote: The instruction informed the jury that it had to find specific intent to convict Turner of first-degree murder as an aider and abettor.] Because the trial court did not abuse its discretion in giving the aiding-and-abetting instruction, *see Crawford v. State*, 121 Nev. 744, 748, 121 )P.3d 582, 585 (2005), appellate counsel's failure to challenge the instruction did not amount to ineffective assistance. For similar reasons, appellate counsel was not ineffective in failing to rely on a meritless specific-intent ground when challenging the sufficiency of the evidence to support the second-degree murder conviction. The district court therefore did not err in denying this claim.

(ECF No. 14-25 at 7–8 (Order of Affirmance).)

16

The Nevada Supreme Court's ruling that the aiding-and-abetting instruction was a proper statement of Nevada law is authoritative, and beyond the scope of federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[S]tate court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Turner makes no colorable claim, or showing, that the aiding-and-abetting instruction in any way violated his federal constitutional rights.

Therefore, given that the aiding-and-abetting instruction was proper, the Nevada Supreme Court reasonably ruled that Turner's appellate counsel was not ineffective for not raising an issue regarding that jury instruction on his appeal. That ruling was not an unreasonable application of *Strickland*, or any other United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented.

Turning to the claim in Ground 1B that Turner's trial counsel was ineffective for failing to challenge the aiding-and-abetting instruction, the Nevada Supreme Court ruled that claim to be procedurally barred because of how it was presented on the appeal and declined to address the claim on its merits. (*See* ECF No. 14-25 at 7–8 (Order of Affirmance).) Therefore, the claim is subject to denial in this case as procedurally defaulted, unless Turner can show that some exception to the procedural default doctrine applies. Turner does not do so. *Martinez* does not apply, to save this claim from the procedural default, for two reasons. First, the default of the claim in the state habeas action occurred on the appeal before the Nevada Supreme Court, not in the state district court; in the state district court, the claim was raised, and adjudicated on its merits. (*See* ECF No. 13-29 at 7, 18–20 (Petition for Writ of Habeas Corpus); ECF No. 14-5 at 6 (Order).) *Martinez* only concerns ineffective assistance of post-conviction counsel in the "initial-review collateral proceeding," which, here, is the habeas proceeding in the state district court. *See Martinez*, 566 U.S. at 16 ("The holding in this case does not concern

attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . ..."). Second, given the Nevada Supreme Court's ruling that the aiding-and-abetting instruction was proper, the ineffective assistance of trial counsel claim is not substantial within the meaning of *Martinez*. *See Id.* at 14 ("To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."). The ineffective assistance of trial counsel claim in Ground 1B, then, will be denied as procedurally defaulted.

The Court will, therefore, deny Turner habeas corpus relief on Grounds 1B and 1J(i).

## E.    Ground 1C

In Ground 1C, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to file a motion to sever his trial from the trial of his codefendant, and because his appellate counsel was ineffective for failing to raise the issue on his direct appeal. (*See* ECF No. 27 at 3, 9, 33–37 (Amended Petition).) Turner argues that, because of his trial counsel's failure to seek severance, he was unable to confront his codefendant, Ronald Hulsey, who invoked his constitutional right not to testify, and Jamie Hulsey, Ronald Hulsey's wife, who invoked her spousal privilege. (*See id.*)

The Court has dismissed, as procedurally defaulted, the claim of ineffective assistance of appellate counsel in Ground 1C. (*See* ECF No. 34 at8, 15 (Order filed August 20, 2018).)

In his state habeas action, Turner asserted the claim of ineffective assistance of trial counsel in Ground 1C. (*See* ECF No. 13-29 at 7, 20–21 (Petition for Writ of Habeas Corpus).) The state district court held an evidentiary hearing, at which evidence was presented regarding this claim. (*See* ECF No. 14-5 at 5, 19–20 (Order); ECF No. 14-10 (Transcript of Evidentiary Hearing).) Following the evidentiary hearing, the state district court denied Turner relief. (*See* ECF No. 14-12 (Order Denying Post-Conviction Relief).)

1    With respect to the claim that Turner's trial counsel was ineffective for not moving to sever

2    Turner's case from his codefendant's, the state district court made the following findings:

         4.      Jamie Hulsey is married to co-defendant Ronald Hulsey. Mr.
3    Turner contends that Mr. Springgate should have sought severance from
4    Mr. Hulsey so Jamie Hulsey would be available to testify that she never saw
     him strike Ms. Faircloth. Mr. Turner's contention is problematic for several
5    reasons. First, the State identified Ms. Hulsey as a witness favorable to the
     prosecution. It attempted to call Ms. Hulsey to testify at the preliminary
6    examination. She invoked the marital privilege under NRS 49.295(1)(a).
     The State then attempted to call her as a witness against Mr. Turner only.
7    Mr. Turner objected and Ms. Hulsey's compelled testimony was the subject
     of a writ proceeding during the justice court case. *See* Order Den. Pet. For
8    Writ of Habeas Corpus and Writ of Prohibition, CR11-0387 (Mar. 24, 2011).
     Mr. Turner specifically resisted his sister's testimony when the State sought
9    to introduce it against him.

         5.      Second, Mr. Springgate did not consider Ms. Hulsey to be a
10   credible witness. She was directly involved in the fight ending in Ms.
11   Faircloth's death. She secreted Mr. Turner and various children away from
     the crime scene. Mr. Springgate did not want inculpatory evidence from the
12   children admitted. Ms. Hulsey provided inconsistent statements at the crime
     scene and during later interviews with law enforcement.
13
         6.      Mr. Springgate made the tactical decision to not seek
14   severance of the trials involving Mr. Hulsey and Mr. Turner. Ms. Hulsey's
     testimony would not assist Mr. Turner. The co-defendants did not have
15   inconsistent defenses. They presented a unified defense of manslaughter.
     Mr. Springgate wanted to try the case with Mr. Hulsey as a co-defendant
16   because there was substantial evidence that Mr. Hulsey was the person
     who kicked Ms. Faircloth. Mr. Hulsey's shoe print was embedded on Ms.
17   Faircloth's post-mortem face. The autopsy photographs were graphic and
     unpleasant. There was no evidence that Mr. Turner kicked Ms. Faircloth,
18   and Mr. Springgate hoped this fact would persuade the jury that Mr. Hulsey
     was primarily responsible for Ms. Faircloth's death.
19
         7.      Mr. Springgate's tactical trial decision to not seek severance
20   and call Ms. Hulsey was confirmed at the post-conviction evidentiary
     hearing. Mr. Turner and Ms. Hulsey both testified that Mr. Turner never
21   struck Ms. Faircloth. Their testimony was self-serving. When measured
22   against the trial evidence, which was filtered through the adversarial
     process of cross-examination, the post-conviction evidence was
23   unpersuasive.

24   (ECF No. 14-12 at 4–5 (Order Denying Post-Conviction Relief).) Turner raised this issue

25   on the appeal from the denial of his state habeas petition. (*See* Appellant's Opening Brief

26   ECF No. 14-21 at 44–53 (Appellant's Opening Brief).) The Nevada Supreme Court

27   affirmed the denial of relief on this claim, ruling as follows:

28   ///

. . . Turner argues that trial counsel should have moved to sever his trial from his codefendant's trial. To successfully seek a severance, counsel would have had to establish that a joint trial would compromise a specific trial right or prevent the jury from reliably determining guilt, as where the codefendants have conflicting defenses. *See Chartier v. State*, 124 Nev. 760, 764–65, 191 P.3d 1182, 1185 (2008). None of the arguments now asserted by Turner would have supported a motion to sever in this case. Trial counsel did not [ ] call the codefendant's wife (J. Hulsey) as a witness at trial due to concerns about her credibility and thus the witness's invocation of the spousal privilege during the joint trial did not compromise a specific trial right. Turner's defense did not conflict with that of his codefendant because his trial counsel made a tactical decision to pursue a unified manslaughter defense with the codefendant's counsel. To the extent that Turner asserts that severance was required to avoid a Confrontation Clause violation regarding his codefendant's police statement, his confrontation rights were not implicated because his codefendant's statement did not incriminate or mention Turner. *See Bruton v. United States*, 391 U.S. 123, 126 (1968). A severance motion would have lacked merit, and we accordingly conclude that Turner has failed to show that trial counsel was deficient in failing to so move or that he was prejudiced by its omission. The district court therefore did not err in denying this claim.

. . . Turner argues that trial counsel should have called J. Hulsey as a witness. Counsel alone is entrusted with tactical decisions, such as what witnesses to develop. *Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002). The district court found that trial counsel considered J. Hulsey to not be credible where she was directly involved in the fight, transported Turner from the crime scene, and provided inconsistent statements to police. Further, trial counsel was concerned that her testimony would invite G.H.'s inculpatory testimony. We conclude that substantial evidence supports these findings and that Turner has not shown that these findings are not entitled to deference or that counsel's tactical decision with respect to this witness was not objectively reasonable under the circumstances. *See Lara*, 120 Nev. at 180, 87 P.3d at 530. The district court therefore did not err in denying this claim.

. . . Turner argues that trial counsel should not have pursued a unified trial strategy with his codefendant. The district court found that trial counsel made a tactical decision to seek a joint trial when there was substantial evidence that Turner's codefendant kicked Faircloth in the head so that counsel could argue that Turner did not cause Faircloth's death despite having fought alongside his codefendant. The district court found counsel's testimony that Turner approved of the trial strategy was credible. Turner has not shown that these findings are not entitled to deference or that counsel's tactical decision was not objectively reasonable under the circumstances and thus has failed to show that counsel's performance was deficient. We conclude that Turner has failed to show that counsel was ineffective on this ground and that the district court therefore did not err in denying this claim.

(ECF No. 14-25 at 4–6 (Order of Affirmance).)

Turner's trial counsel testified as follows at the evidentiary hearing:

Q.     Now, after preliminary hearing, but prior to trial, did you ever file a motion to sever?

A.      No.

Q.      Why not?

A.      The parties did not have inconsistent defenses.

Q.      Did you wish to have Ms. Hulsey testify on behalf of your client?

A.      No.

Q.      Why not?

A.      I did not regard her as a credible witness, and I thought she was adverse to our trial strategy.

Q.      Why did you think she was not credible?

A.      She had given inconsistent statements to the police at the scene of the crime; she had given inconsistent statements to the police in her interview; she had spirited my client and the minor children from the crime scene, which would have come up in her testimony, and would have looked bad for him.

The testimony from the minor child witnesses, when they were in the car, with regards to Mr. Turner, was not helpful to him, and that would have come out if she was testifying.

And in her statement to the police, she was equivocal about whether or not she actually saw Mr. Turner hit Ms. Faircloth or not. Well, she wasn't equivocal, she said she didn't know.

Q.      So were there other reasons that this case would have been better suited to be severed, and an independent trial for Mr. Hulsey?

A.      Were there other reasons that it would be better to be severed?

Q.      Yes.

A.      No. My strategy was that since we're not going to get a severance on the grounds of inconsistent defenses, and that Ms. Hulsey was not a credible witness or a good witness, then it was my opinion that we were better off trying the case together – since I thought it was going to be tried together, in any event – with someone that I could be relatively certain would not spend the bulk of the trial – if you'll pardon the vernacular – shoveling manure into my client's boots, while I could avoid doing that to Mr. Hulsey, and the two of us could have a unified strategy that would not involve implicating each other.

(ECF No. 14-10 at 51–52 (Transcript of Evidentiary Hearing).)

It was reasonable for the Nevada Supreme Court to conclude that trial counsel made an informed strategic decision not to seek severance, that trial counsel's

performance was not unreasonable in that regard, and that, at any rate, Turner was not prejudiced. The Nevada Supreme Court's ruling was not an unreasonable application of *Strickland*, or any other United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny Turner habeas corpus relief with respect to Ground 1C.

### F. Grounds 1D and 1J(ii)

In Ground 1D, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to file a motion for a mistrial based on jury misconduct, and because his appellate counsel was ineffective for failing to raise the issue on his direct appeal. (*See* ECF No. 27 at 3, 9, 38–41 (Amended Petition).) In Ground 1J(ii), Turner repeats his claim that his appellate counsel was ineffective for failing to raise the issue of the alleged jury misconduct. (*See id.* at 3, 11, 59–64).)

The Court has dismissed, as procedurally defaulted, the claim, of ineffective assistance of appellate counsel in Grounds 1D and 1J(ii). (*See* ECF No. 34 at 9, 12–13, 15 (Order filed August 20, 2018).)

In his state habeas action, Turner asserted the claim of ineffective assistance of trial counsel in Ground 1D. (*See* ECF No. 13-29 at 7, 21–22 (Petition for Writ of Habeas Corpus).) The state district court dismissed that claim, ruling as follows:

> Mr. Turner argues at least one juror prematurely developed opinions about his case, as brought to this Court's attention during trial by juror 9, and his counsel was ineffective for failing to seek a mistrial based on this misconduct.
>
> A petitioner arguing counsel was ineffective for failing to file a motion must show the motion would have been meritorious. [*Cf. Kirksey v. State*, 112 Nev. 980, 990, 923 P.2d 1102, 1109 (1996).] A defendant moving for a mistrial based on juror misconduct must present admissible evidence showing the occurrence of misconduct and that the misconduct was prejudicial. Prejudice is shown when there is a reasonable probability the misconduct affected the verdict. *Meyer v. State*, 119 Nev. 554, 563–64, 80 P.3d 447, 455 (2003).
>
> In exercising its discretion, a district court must conduct a hearing to determine if the violation of the admonishment occurred and whether the misconduct is prejudicial to the defendant. Prejudice requires an evaluation of the quality and character of the misconduct, whether other jurors have been

influenced, and the extent to which a juror who has committed misconduct can withhold any opinion until deliberation.

*Viray v. State*, 121 Nev. 159, 163–64, 111 P.3d 1079, 1082 (2005). "Not every incidence of juror misconduct requires the granting of a motion for a new trial. Each case turns on its own facts, and the degree and pervasiveness of the prejudicial influence possibly resulting. The district court is vested with broad discretion in resolving allegations of juror misconduct." *Meyer*, 119 Nev. at 562, 80 P.3d at 453–54 (2003) (internal quotation marks omitted) (quoting *Barker v. State*, 95 Nev. 309, 313, 594 P.2d 719, 721 (1979); *United States v. Paneras*, 222 F.3d 406, 411 (7th Cir. 2000)).

In *Chavez v State*, one of the alternate jurors told other jurors she believed the defendant was guilty. The court became aware of this and "proceeding in accord with *Viray* . . . held a hearing." 125 Nev. 328, 347, 213 P.3d 476, 489 (2009). "After canvassing each juror, the district court excused the alternate juror, who had expressed her opinion that Chavez was guilty." *Id.* The three other jurors who had heard the comment assured the court they could remain impartial. On appeal, the Nevada Supreme Court determined a mistrial was not necessary because excusing the alternate juror was an appropriate remedy and "[a]ll the other jurors stated that they did not hear anyone express an opinion about the ultimate outcome of the case." *Id.*

"[D]epending on the nature, scope, and timing of the misconduct, the judge may have one or more reasonable means of curing any possible prejudice .... a curative instruction ... may suffice." *Johnson v. State*, 31 A.3d 239, 246 (Md. 2011). However, in *Johnson*, the Court found the trial court's curative instruction insufficient because "notwithstanding the obvious potential for prejudice ... the court took no steps to develop facts related to the effect the extrinsic information had on the jury." *Id.* at 249. That is not the case here. This Court spoke with the reporting juror on the record to determine the nature and extent of the misconduct and whether other jurors had been influenced or prematurely decided the case before fashioning a remedy.

Mr. Turner argues jurors made up their minds about the case before presentation of evidence concluded and that misconduct continued throughout the proceeding. However, he fails to set forth specific factual allegations and provides no evidence to support his argument. His contention is belied by the record, which indicates that despite comments on witness credibility, none of the jurors formed a premature opinion about the ultimate outcome. The transcript of this Court's discussion with juror 9 indicates there had been commentary on credibility only at the beginning of the trial, which was addressed by a curative instruction. There is nothing in the record showing misconduct persisted. Mr. Turner argues this Court was required to canvas the entire panel. But *Viray* states only that the court must evaluate whether other jurors have been influenced; it does not limit the court's discretion as to how this evaluation is to be performed.

Mr. Springgate was not ineffective for failing to file a motion for a mistrial because such a motion would not have been meritorious.

(ECF No. 14-5 at 9–11 (Order) (citations to state-court habeas petition omitted).)

23

On the appeal in his state habeas action, Turner argued that the district court erred in dismissing this claim. (*See* ECF No. 14-21 at 63–65 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed, ruling the claim to be procedurally barred, and declined to address the claim on its merits. (*See* ECF No. 14-25 at 7–8 (Order of Affirmance).) Therefore, this claim is subject to denial as procedurally defaulted, unless Turner can show that some exception to the procedural default doctrine applies. Turner does not do so. *Martinez* does not apply because the default was on the appeal before the Nevada Supreme Court, not in the state district court (*see Martinez*, 566 U.S. at 16); in the state district court, the claim was raised, and adjudicated on its merits. (*See* ECF No. 13-29 at 7, 21–22 (Petition for Writ of Habeas Corpus); ECF No. 14-5 at 9–11 (Order).) Furthermore, taking into consideration the state district court's ruling, quoted above, and the record of the handling of the issue during trial by counsel and the court (*see* ECF No. 12-10 at 5–14, 24–27 (Transcript of Trial, September 8, 2011)), this Court finds that the ineffective assistance of trial counsel claim in Ground 1D is not substantial within the meaning of *Martinez*. *See id.* at 14. A motion for mistrial would not have been successful, and trial counsel was not ineffective for not making such a motion. The ineffective assistance of trial counsel claim in Ground 1D will be denied as procedurally defaulted.

The Court will deny Turner habeas corpus relief on Grounds 1D and 1J(ii).

### G.   Ground 1E

In Ground 1E, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to file a motion to suppress his statements to law enforcement. (*See* ECF No. 27 at 3, 9, 42–43 Amended Petition).)

Turner asserted this claim in his state habeas action. (*See* ECF No. 13-29 at 7, 22–25 (Petition for Writ of Habeas Corpus).) The state district court dismissed the claim, ruling as follows:

> When he was first interrogated by detectives at around 2:00 a.m. on September 1, 2010, Mr. Turner stated he identifies with "white pride" and "hates all ni***rs." He now argues his racial comments, which were introduced at trial, motivated the jury to convict him of second degree murder rather than a lesser crime, and counsel was ineffective for failing to

file a motion to suppress. He argues the statements and his waiver of *Miranda* were not voluntary because he was intoxicated.

### a. Voluntariness of Statements

"A criminal defendant is deprived of due process of law if his conviction is based, in whole or in part, upon an involuntary confession, and even if there is ample evidence aside from the confession to support the conviction." *Passama v. State*, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987). A confession is involuntary if coerced by physical intimidation or psychological pressure. *Brust v. State*, 108 Nev. 872, 874, 839 P.2d 1300, 1301 (1992). "[T]he voluntariness analysis involves a subjective element .... the prosecution has the burden of proving by a preponderance of the evidence that ... 'the defendant's will was [not] overborne.'" *Rosky v. State*, 121 Nev. 184, 193, 111 P.3d 690, 696 (2005) (quoting *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)). Courts look to various factors, including the defendant's age, lack of education or intelligence, lack of advice regarding constitutional rights, the length of detention, whether questioning was prolonged, and the use of punishments such as deprivation of sleep. "A suspect's prior experience with law enforcement is also a relevant consideration." *Id.* at 193–94, 111 P.3d at 696.

"The defendant's intoxication alone does not automatically make a confession inadmissible. A confession is inadmissible only if it is shown that the accused was intoxicated to such an extent that he was unable to understand the meaning of his comments." *Kirksey*, 112 Nev. at 992, 923 P.2d at 1110. Exhibit 2 to the petition reflects that at 3:20 a.m. on September 1, 2010, Mr. Turner's blood-alcohol content (BAC) was .116. Accordingly, when his interview with Detective Bowen began at 2:00 a.m., Mr. Turner's BAC was not far above .116. That is only a few points beyond the limit at which a person is considered sufficiently sober to drive. *See* NRS 484C.110(1). This indicates Mr. Turner was not so intoxicated his statements were per se involuntary. He provides no facts or evidence tending to show that when he made the statements in question he was unable to understand what he was saying. To the contrary, he gave a detailed and coherent statement describing the events, and he returned later at 12:30 p.m. and repeated the statement he had given earlier.

In *Kirksey*, the Nevada Supreme Court found no indication defendant was so affected by substance withdrawals his statement was involuntary, reasoning that "he recounted the incident in essentially the same words. He was responsive to the questions posed by the officers in each interview and there was little variation in his story." 112 Nev. at 992, 923 P.2d at 1110. Similarly here, Mr. Turner made a coherent statement while under the moderate influence of alcohol, and he returned when he was no longer inebriated and recounted the same description of events.

### b. Voluntariness of Waiver

Under *Miranda v. Arizona*, a suspect must be warned they have the right to remain silent and to the assistance of counsel if they are subjected to custodial interrogation. 384 U.S. 436, 444 (1966). "In order to admit statements made during custodial interrogation, the defendant must knowingly and voluntarily waive the Miranda rights." *Koger v. State*, 117 Nev. 138, 141, 17 P.3d 428, 430 (2001). Statements taken in violation of

*Miranda* are inadmissible at trial. *Miranda*, 384 U.S. at 444, *Rosky v. State*, 121 Nev. 184, 191, 111 P.3d 690, 695 (2005).

"A valid waiver of rights under *Miranda* must be voluntary, knowing and intelligent. A waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper conduct." The waiver need not be written; it can be inferred from the suspect's actions. *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181–82 (2006). A court will examine the same factors discussed above: background, conduct, experience and age of the defendant; defendant's education and intelligence; any advice given to defendant regarding constitutional rights; the length of defendant's detention; the repetitive or prolonged nature of questioning; and punishments used such as deprivation of food or sleep. *Floyd v. State*, 118 Nev. 156, 171, 42 P.3d 249, 259–60 (2002), *abrogated on other grounds by Good v. State* 124 Nev. 110, 178 P.3d 154 (2008)).

Mr. Turner's intoxication alone does not make his waiver of *Miranda* involuntary. *See Floyd*, 118 Nev. at 173, 42 P.3d at 260. He states only that he "could not and did not voluntarily waive his rights per *Miranda* to speak with police." He fails to provide any specific factual allegations indicating he was too intoxicated to understand what he was doing. Having failed to provide specific factual allegations, he is not entitled to an evidentiary hearing.

(ECF No. 14-5 at 11–14 (Order) (citations to state-court habeas petition and trial transcript omitted).) Turner then asserted this claim on the appeal in his state habeas action. (*See* ECF No. 14-21 at 59–65 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed, ruling as follows:

. . . Turner argues that trial counsel should have moved to suppress his police statement because he was intoxicated. A police statement will be inadmissible as involuntarily uttered by reason of intoxication only if the speaker was so intoxicated that he was unable to understand the meaning of his remarks. *Kirksey*, 112 Nev. at 992, 923 P.2d at 1110. Turner made a voluntary statement on the night of the incident and his blood-alcohol content three hours later was 0.116. Turner's responses, however, were cogent, and he appeared to comprehend the sentiments expressed. Further, Turner's statement the following afternoon presented a substantially similar account of the events, further showing that his prior statement was uttered cogently and with comprehension. Accordingly, a suppression motion would have lacked merit, and we conclude that trial counsel was not deficient in omitting it and that Turner was not prejudiced in its omission. The district court therefore did not err in denying this claim.

(ECF No. 14-25 at 7 (Order of Affirmance).)

The Nevada Supreme Court's analysis was reasonable. There is no showing that the Nevada Supreme Court's ruling was contrary to, or an improper application of,

*Strickland* or any other Supreme Court precedent, or that it was unreasonable in light of the evidence. Applying the deference mandated by 28 U.S.C. 2254(d), this Court determines that federal habeas relief is unwarranted—it is reasonably arguable that the state court ruling was correct. *See Richter*, 562 U.S. at 103. The Court will deny habeas corpus relief on Ground 1E.

## H.    Grounds 1F and 1G

In Ground 1F, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to meaningfully cross-examine prosecution witnesses. (*See* ECF No. 27 at 3, 9–11, 44–48 (Amended Petition).) In Ground 1G, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to investigate and prepare for the testimony of prosecution witnesses. (*See id.* at 3, 11, 49–52.)

Turner asserted these claims in his state habeas action, contending that his trial counsel was ineffective with respect to his investigation and cross-examination of witnesses John Clymer and Frances Bailey. (*See* ECF No. 13-29 at 7, 25–27 (Petition for Writ of Habeas Corpus).) The state district court granted Turner a hearing with respect to the claim that his trial counsel did not adequately investigate Bailey's ability to observe the incident. (*See* ECF No. 14-5 at 14–16 (Order).) The state district court dismissed the remainder of these claims, ruling as follows:

> Frances Bailey, neighbor to the Hulseys, was the person who called 9-1-1. She witnessed some of the altercation from the front yard of her house and testified at trial regarding what she saw and heard. She testified she had seen two men stomping and kicking at something on the ground, presumably someone, as she could hear "gargling." But she said she could only see the two men from the waist up because her view of that part of the Hulsey's yard was obstructed to some degree. She testified she heard a male voice yelling, "You want to hit my sister, this is what will happen to you." She also testified that "'[n]i***r-lover' was what they kept yelling over and over again."
>
> Mr. Turner argues "[c]ounsel's cross-examination of witness Frances Bailey was limited. This witness could not have seen what she testified to because it was physically impossible. Inadequate investigation led to inadequate cross-examination." He also argues that "[c]ross-examination of witness John Clymer was ineffective as Mr. Clymer never testified to any race based statements . . .. Cross examination of Mr. Clymer would have

27

demonstrated that his anger at the loss of Carolyn F. was tainting his testimony." Mr. Turner contends that if "counsel had effectively cross examined the key witnesses, Petitioner would not have been found guilty of second degree murder."

### a.   Cross-Examination of Frances Bailey

While failure to effectively cross-examine may constitute ineffective assistance, a petitioner must identify the evidence that would have been revealed by effective cross-examination. *See Hargrove v. State*, 100 Nev. 498, 502, 608 P.2d 222, 225 (1984). Mr. Turner has not accomplished this in his petition. He claims Ms. Bailey could not have seen what she testified to but does not explain why or what mor Mr. Springgate could have done to reveal this to the jury. Exhibit 172, an aerial photograph of East First Street, was offered demonstratively at trial. Ms. Bailey was able to mark on the photo where her house was in relation to the Hulsey's. Mr. Springgate referred to this photograph during his cross-examination to discuss with Ms. Bailey the obstacles that impeded her view. There is no basis for finding the exhibit was such that a different depiction could have shown Ms. Bailey was perjuring herself and could not have actually seen what she testified to. Mr. Turner has failed to set forth specific factual allegations that would entitle him to a hearing. [*Means v. State*, 120 Nev. 1001, 1016, 103 P.3d 25, 35 (2004).] Furthermore, his allegations are belied by the record. Mr. Springgate questioned Ms. Bailey in great depth regarding her view from where she was standing.

### b.   Cross-Examination of John Clymer

Mr. Clymer told police Mr. Turner hit Ms. Faircloth only after he learned Ms. Faircloth was dead, and Mr. Springgate questioned him about this on cross-examination. This testimony indicated anger may have motivated Mr. Clymer's accusation. Accordingly, Mr. Turner's argument that Mr. Springgate was ineffective for failing to reveal this bias by cross-examination is belied by the record.

Mr. Turner also argues Mr. Clymer never mentioned any of the yelling Ms. Bailey heard. Mr. Turner fails, however, to detail what testimony would have resulted from further cross-examination of Mr. Clymer. Mr. Turner does not argue Mr. Clymer would have testified that the yelling Ms. Bailey said she heard never happened. Notably, when asked on direct examination what happened after Ms. Faircloth was attacked, Mr. Clymer testified that "[t]hings went kind of blank for me right then."

Mr. Turner has failed to make specific factual allegations that, if true, would show counsel ineffectively cross-examined Ms. Bailey or Mr. Clymer in a way that prejudiced him. *Means*, 120 Nev. at 1016, 103 P.3d at 35.

(*Id.* at 14–16) (citations to trial transcript and state-court habeas petition omitted).) Then,

after the evidentiary hearing, the state district court ruled as follows regarding the claim

that Turner's trial counsel did not adequately investigate Bailey's ability to observe the

incident:

///

8.    Mr. Springgate did not investigate the physical dimensions of Ms. Bailey's testimony as thoroughly as it was investigated post-conviction. Mr. Turner's post-conviction investigation focused on lines of sight and geographical distances. Even though there were some unanswered questions about where Ms. Bailey stood in relation to what she saw and heard, the gravamen of her testimony was Mr. Turner's racist and violent comment. Mr. Turner's post-conviction investigator did not demonstrate the volume of Mr. Turner's comment or whether it could have been heard by Ms. Bailey. Nor could he place Ms. Bailey at any specific location when she heard Mr. Turner's comment.

9.    Mr. Springgate's investigation decision did not fall below a reasonable standard. Ms. Bailey testified about what she heard, as opposed to what she saw. As noted in a prior order, Mr. Springgate effectively cross-examined Ms. Bailey. Exhibit 172, an aerial photograph of East First Street, was offered at trial. Ms. Bailey was able to mark on the photo where her house was in relation to the Hulsey's home. Mr. Springgate referred to this photograph during his cross-examination to discuss with Ms. Bailey the obstacles that impeded her view. Mr. Springgate questioned Ms. Bailey in great depth regarding her view from where she was standing.

(ECF No. 14-12 at 5–6 (Order Denying Post-Conviction Relief).)

On his appeal in his state habeas action, Turner specifically raised the issue regarding his trial counsel's investigation of Bailey's observations, and he generally asserted that the state district court erred in dismissing the rest of these claims. (*See* ECF No. 14-21 at 53–57, 63–65 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed, ruling as follows regarding the claim regarding trial counsel's investigation of Bailey:

. . . Turner argues that trial counsel should have investigated more thoroughly the distance between witness F. Bailey's location and the crime scene. The district court found that trial counsel cross-examined Bailey on her ability to see the crime scene and that, in demonstrating obstructions to the line of sight, Tuner failed to demonstrate that the distance precluded Bailey's hearing the yelled comments that incriminated Turner. We conclude that Turner has not shown deficiency because trial counsel did cross-examine the witness on this ground and has not shown prejudice because he has not shown that further investigation would have produced evidence leading to a different outcome. *See Molina*, 120 Nev. at 192, 87 P.3d at 538. To the extent that Turner claims a Confrontation Clause violation, the claim is belied by the record because the witness was cross-examined. The district court therefore did not err in denying this claim.

(ECF No. 14-25 at 6–7 (Order of Affirmance).) And, here again, regarding the remainder of these claims, which were dismissed by the state district court before the evidentiary hearing, the Nevada Supreme Court ruled that those claims were procedurally barred and declined to reach their merits. (*See id.* at 7–8).)

Regarding the claim that Turner's counsel was ineffective with respect to his investigation of Bailey, this Court, having examined the trial transcript and the evidentiary hearing transcript, and the entire record, determines that the Nevada Supreme Court's ruling was reasonable. Turner made no showing that his trial counsel's investigation of Bailey was unreasonable, or that any further investigation would have changed the cross-examination of Bailey so significantly as to raise a reasonable probability that, but for the alleged failure to adequately investigate, the result of the trial would have been different. *See Strickland*, 466 U.S. at 688, 694.

Regarding the remainder of the claims in Grounds 1F and 1G—those dismissed by the state district court before the evidentiary hearing—the Nevada Supreme Court ruled those claims to be procedurally barred and declined to address their merits. Those claims, therefore, are subject to denial in this federal habeas action as procedurally defaulted, unless Turner can show that some exception to the procedural default doctrine applies. Turner does not do so. Here again, the default was on the appeal before the Nevada Supreme Court, not in the state district court; in the state district court, the claims were raised, and adjudicated on their merits. (*See* ECF No. 13-29 at 7, 25–27 (Petition for Writ of Habeas Corpus); (ECF No. 14-5 at 14–16 (Order).) *Martinez* does not apply. *See Martinez*, 566 U.S. at 16. Furthermore, taking into consideration the state district court's ruling, and the entire record, and in particular the transcripts of the cross-examinations of Bailey and Clymer (*see* ECF No. 12-10 at 72–138, 146–53, 159–64) (Transcript of Trial, September 7, 2011 (Clymer)); *id.* at 279–95 (Bailey), this Court finds that the ineffective assistance of trial counsel claim in Ground 1F is not substantial within the meaning of *Martinez*. *See id.* at 14. Turner does not show that his trial counsel's investigation of Clymer, or his cross-examination of Clymer or Bailey, was unreasonable, or that he was prejudiced. These claims in Grounds 1F and 1G will be denied as procedurally defaulted.

The Court will, therefore, deny Turner habeas corpus relief with respect to Grounds 1F and 1G.

## I.     Grounds 1H and 1J(iii)

In Ground 1H, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to prepare for his sentencing hearing. (*See* (ECF No. 27 at 3, 11, 53–55 (Amended Petition).) In Ground 1J(iii), Turner claims that his appellate counsel was ineffective for not asserting, on his direct appeal, that his sentence is cruel and unusual, in violation of his federal constitutional rights. (*See id.* at 3, 11, 59–64.)

The Court has dismissed, as procedurally defaulted, the claim of ineffective assistance of appellate counsel in Ground 1J(iii). (*See* ECF No. 34 at 12–13, 15 (Order filed August 20, 2018).)

In his state habeas action, Turner asserted the claim that his trial counsel was ineffective with respect to his sentencing hearing. (*See* ECF No. 13-29 at 7, 27–29 (Petition for Writ of Habeas Corpus).) The state district court dismissed that claim, ruling as follows:

> Mr. Turner argues Robin Turner and Jamie Hulsey were present at the sentencing hearing to testify regarding Mr. Turner's daughter, Vanessa, who was born premature and assisted by Mr. Turner in "[overcoming] many of the birth issues." Instead, counsel Springgate relied upon letters of mitigation written to the Court."
>
> Failure to contact and present a defendant's family members at sentencing may constitute ineffective assistance of counsel. *Doleman v. State*, 112 Nev. 843, 848–49, 921 P.2d 278, 281 (1996). In *Doleman*, [the] defendant was found guilty of murder and robbery and sentenced to death. By a petition for writ of habeas corpus, he claimed his trial counsel failed to call certain witnesses during the penalty phase.
>
> Doleman's mother would have told the jury that during Doleman's childhood, she was a prostitute and drug addict, Doleman was physically abused, and Doleman was often abandoned. Also, Doleman's mother [would] have described the series of foster homes and reform schools that Doleman attended from age four. Doleman's sister was prepared to give similar testimony.
>
> *Id.* at 848, 921 P.2d at 281. The Court found trial counsel ineffective, reasoning that by failing to investigate defendant's family, counsel failed to discover and assess their testimony and whether it would have benefited defendant at sentencing. "[W]e conclude that trial counsel could not make a reasonable tactical decision whether Doleman's family members should testify at the penalty hearing." *Id.*; *see also Lambright v. Schriro*, 490 F.3d

1103, 1116 (9th Cir. 2007) ("[A] decision not to ... offer particular mitigating evidence is unreasonable unless counsel has explored the issue sufficiently to discover the fact that might be relevant to ... making an informed decision.").

In evaluating prejudice, the Ninth Circuit has stated the court should compare the evidence petitioner alleges should have been presented with what was actually presented at sentencing and determine whether the difference "is sufficient to 'undermine confidence in the outcome' of the proceeding." *Lambright*, 490 F.3d at 1121. Here, there was ample evidence and testimony presented at sentencing regarding Mr. Turner's relationship with his children. There were three letters in aid of sentencing. One was from Mr. Turner's grandmother, in which she described Mr. Turner as a "hard working and very devoted father." Another was from Mr. Turner's aunt, in which she spoke of Mr. Turner's daughters' dependence on his support and stated that "Jeremy is one of the best fathers I have known. He will have a job available to him as soon as he is released in order to ... continue raising both his daughters." Mr. Springgate also spoke of Mr. Turner's daughters, "that, by the reports, by the letters in aid of sentencing, are the most important presented at sentencing, and the things that caused him to straighten up." Mr. Springgate also told this Court how Mr. Turner's daughters had visited him every week while he was in custody. He asked this Court to "give [Mr. Turner] that daylight to hope for ... being able to come out and reintegrate and see his daughters." Mr. Turner cannot establish prejudice because there was ample evidence presented regarding his positive qualities as a father.

(ECF No. 14-5 at 16–17 (Order) (citations to state-court habeas petition, and citations to items in state habeas court record, omitted).)

On the appeal in his state habeas action, Turner argued that the district court erred in dismissing this claim. (*See* ECF No. 14-21 at 63–65 (Appellant's Opening Brief).) The Nevada Supreme Court ruled the claim procedurally barred and declined to reach its merits. (*See* ECF No. 14-25 at 7–8 (Order of Affirmance).) This claim, then, is subject to denial in this federal habeas action as procedurally defaulted, unless Turner can show that some exception to the procedural default doctrine applies. Turner does not do so. Here again *Martinez* does not apply because the default was on the appeal before the Nevada Supreme Court, not in the state district court (*see Martinez*, 566 U.S. at 16); in the state district court, the claim was raised, and adjudicated on its merits. (*See* ECF No. 13-29 at 7, 21–22 (Petition for Writ of Habeas Corpus); ECF No. 14-5 at 9–11 (Petition for Writ of Habeas Corpus).)

Furthermore, the Court has examined the transcript of the sentencing, and the other materials in the record regarding the sentencing (*see* ECF No. 16-1 (Presentence

Investigation Report) (filed under seal); ECF No. 12-23 (Notice of Documents in Aid of Sentencing); ECF No. 12-24 (Addendum to Notice of Documents in Aid of Sentencing); ECF No. 12-25; ECF No. 12-26 (Letter on Behalf of Defendant – Confidential) (filed under seal)), and the Court finds that the ineffective assistance of trial counsel claim in Ground 1H is not substantial within the meaning of *Martinez. See id.* at 14. Turner does not show that his trial counsel performed unreasonably at sentencing or that the alleged deficiency was such as to give rise to a reasonable probability that, but for the alleged deficiency, the result of the sentencing would have been different. *See Strickland*, 466 U.S. at 688, 694. The Court will deny Turner's claims in Ground 1H and 1J(iii) as procedurally defaulted.

## J. Grounds 1I and 1J(v)

In Ground 1I, Turner claims that his federal constitutional rights were violated because his trial counsel was ineffective for failing to object, or "argue against" the restitution order imposed as part of his sentence. (*See* ECF No. 27 at 3, 11, 56–58 (Amended Petition).) In Ground 1J(v), Turner claims that his appellate counsel was ineffective for failing to assert on his direct appeal that the restitution order was improper. (*See id.* at 3, 59–64.)

The judgment of conviction included a provision that Turner pay restitution, as follows:

> It is further ordered that Jeremy James Turner shall pay $25.00 as an administrative assessment fee, reimburse the County of Washoe the sum of $1,000.00 for legal representation, and pay restitution in the amount of $49,294.74, to be paid joint and several with co-offender Ronald Hulsey.

(ECF No. 12-27 at 3 (Judgment of Conviction).) Evidently, the $49,294.74 in restitution included $12,110.03 in restitution to the "State of Nevada, Victims of Crime," a "victim agency," for amounts paid to cover Roberts' medical expenses, and $37,184.71 in restitution to Renown Medical Center, to cover Roberts' unpaid medical expenses at that hospital. (*See* ECF No. 16-1 at 10 (Presentence Investigation Report) (filed under seal); ECF No. 12-25 at 36–37 (Transcript of Sentencing Hearing).)

Turner asserted these claims in his state habeas action. (*See* ECF No. 13-29 at 7, 29–30 (Petition for Writ of Habeas Corpus).) The state district court dismissed the claims, ruling as follows:

> Mr. Turner argues both trial and appellate counsel were ineffective for failing to object to the identity of the restitution recipient because "[i]n no way, shape or form is Renown a victim of crime."
>
> Pursuant to NRS 176.033, the court sentencing a defendant to imprisonment must set an amount of restitution for each victim of the offense, if restitution is appropriate. No definition of who or what qualifies as a "victim" is provided. However, in NRS 213.005, which sets forth definitions applicable to NRS Chapter 213 regarding pardons, remissions of fines and commutations of punishments, "victim" is defined as 1) a person, including a governmental entity, against whom a crime has been committed; 2) a person who has been injured or killed as a direct result of the commission of a crime; or 3) a relative of a person described in paragraph (a) or (b). This definition of "victim" is broad and does not necessarily exclude a hospital that treated persons injured by a crime.
>
> In *Roe v. State*, 112 Nev. 733, 917 P.2d 959 (1996), defendant argued that a state agency could not be considered a victim for purposes of restitution pursuant to NRS 176.033. The Court looked to *Igbinovia v. State*, 111 Nev. 699, 895 P.2d 1304 (1995), in which it had recently held that a law enforcement agency that set up a drug sting was not a "victim" eligible to receive restitution. In *Igbinovia*, the Court reasoned that "the word 'victim' has commonly understood notions of passivity, where the harm or loss suffered is generally unexpected and occurs without the voluntary participation of the person suffering the harm or loss." *Id.* at 706, 917 P.2d at 1308. It went on to state, however, that "it is not without any foundation in logic that the government might fall under the wording of subsection [3(a)] of NRS 213.005." *Id.* The *Roe* Court distinguished *Igbinovia*:
>
>> It would be a drastic oversimplification of the holding of *Igbinovia* merely to state that a governmental agency cannot be considered a victim.... The rule announced in *Idbinovia* is a narrow one, tailored specifically to cases where law enforcement agencies have expended money to conduct undercover drug buys.
>
> *Roe*, 112 Nev. at 735, 917 P.2d at 960. It concluded the state agencies at issue—the County Social Services Department and the State Welfare Department—were victims to which the defendant, convicted of child abuse, could be ordered to pay restitution:
>
>> First, they qualify under the reasoning set forth in *Igbinovia*, i.e., the harm or loss suffered was unexpected and occurred without the voluntary participation of the agencies.... Second, the money expended by the agencies was for the benefit of the children in the case, the true victims of [defendant's] criminal conduct.

///

*Id.* Here, Renown Hospital fulfills both of the above qualifications. Its expenditures to treat the injuries caused by Mr. Turner were unexpected and occurred without voluntary participation. And they were for the benefit of the true victims—Ms. Faircloth and Mr. Roberts. Renown was properly considered a victim.

(ECF No. 14-5 at 17–18 (Order) (citation to state-court habeas petition omitted).)

On the appeal in his state habeas action, Turner argued that the district court erred in dismissing these claims. (*See* ECF No. 14-21 at 63–68 (Appellant's Opening Brief).) The Nevada Supreme Court affirmed, ruling as follows on Turner's claim of ineffective assistance of appellate counsel relative to the restitution order:

. . . Turner claims that appellate counsel should have contested the restitution judgment to Renown Hospital, rather than to the person he injured. Turner has not suggested that appellate counsel should have challenged the amount of restitution. Thus, even assuming that Turner should have been ordered to pay restitution to the victim rather than the medical care provider, *but see Martinez v. State*, 115 Nev. 9, 11, 974 P.2d 133, 134 (1999), the challenge omitted by appellate counsel would have changed only the identity of the restitution recipient and therefore would not have resulted in any substantive relief from the restitution order. Accordingly, we conclude that Turner was not prejudiced by appellate counsel's omission of this issue. The district court therefore did not err in denying this claim.

(ECF No. 14-25 at 8–9 (Order of Affirmance).) And, with respect to Turner's claim of ineffective assistance of trial counsel relative to the restitution order, the Nevada Supreme Court ruled that the claim was procedurally barred and declined to reach its merits. (*See* ECF No. 14-25 at 7–8 (Order of Affirmance).)

As an initial matter, the Nevada courts' ruling that the restitution order was proper under Nevada law was a determination of state law, beyond the scope of this federal habeas corpus action. *See Bradshaw*, 546 U.S. at 76; *Mullaney*, 421 U.S. at 691. Turner does not allege that the restitution order violated his federal constitutional rights.

Furthermore, the Nevada Supreme Court's ruling that Turner was not prejudiced, even if appellate counsel's failure to raise the issue of the restitution order was deficient, is reasonable. The Nevada Supreme Court's ruling in this regard was not an unreasonable application of *Strickland*, or any other United States Supreme Court

///

precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Turner habeas corpus relief on Ground 1J(v).

Turning to the Nevada Supreme Court's ruling on the claim of ineffective assistance of trial counsel in Ground 1I, as that court ruled the claim to be procedurally barred, the claim is subject to denial in this federal habeas action as procedurally defaulted, unless Turner can show that some exception to the procedural default doctrine applies. Again, Turner does not do so. *Martinez* does not apply because the default was on the appeal before the Nevada Supreme Court, not in the state district court (*see Martinez*, 566 U.S. at 16); Turner asserted the claim in the state district court, and it was adjudicated on its merits in that court. (*See* ECF No. 13-29 at 7, 29–30 (Petition for Writ of Habeas Corpus); ECF No. 14-5 at 17–18 (Order).) Furthermore, the claim in Ground 1I is not substantial. *See id.* at 14. Accepting the state-court ruling that the restitution order was proper under state law, it follows that Turner's claim that his trial counsel was deficient for failing to contest the restitution order is meritless. Moreover, as the Nevada Supreme Court pointed out in ruling on the claim of ineffective assistance of appellate counsel, Turner was not prejudiced. The Court will deny the claim in Ground 1I as procedurally defaulted.

The Court, therefore, denies Turner habeas corpus relief on Grounds 1I and 1J(v).

**K.    Grounds 1K and 1J(vi)**

In Ground 1K, Turner claims that his federal constitutional rights were violated because of the cumulative errors of his trial counsel. (*See* ECF No. 27 at 10, 65–67 (Amended Petition).) In Ground 1J(vi), Turner claims that his federal constitutional rights were violated because of the cumulative errors of his appellate counsel. (*See id.* at 3, 59–64.) As the Court determines that Turner has not shown there to have been deficient performance by either his trial or appellate counsel, there is no deficient performance to be considered cumulatively under *Strickland*, and the claims in Grounds 1K and 1J(vi) fail. The Court will deny Turner habeas corpus relief on Grounds 1K and 1J(vi).

///

**L.    Grounds 2 and 1J(iv)**

In Ground 2, Turner claims that his federal constitutional rights were violated because there was insufficient evidence to prove that he acted with the malice necessary for the crime of second-degree murder. (*See id.* at 4, 10, 68–74).) In Ground 1J(iv), Turner claims that his appellate counsel was ineffective for failing to raise this issue on his direct appeal. (*See id.* at 3, 59–64).)

The Court has dismissed, as procedurally defaulted, the ineffective assistance of appellate counsel claim in Ground 1J(iv). (*See* ECF No. 34 at 12–13, 15 (Order filed August 20, 2018).)

On his direct appeal, Turner asserted a claim that there was insufficient evidence at trial to support his conviction of second-degree murder. (*See* ECF No. 13-18 at 27–30 (Appellant's Opening Brief).) The Nevada Supreme Court ruled on that claim as follows:

> . . . Turner argues that the evidence presented at trial was insufficient to support his conviction for second-degree murder because his one punch to the victim was insufficient to demonstrate malice. We disagree. The evidence presented at trial indicated that Turner and his codefendant attacked the victim's son. When the victim attempted to intervene, Turner instructed his sister to "take care" of her. After Turner 's sister attacked the victim, Turner pulled the victim's head back by her hair and punched her once in the face, knocking her unconscious with a blow described by the medical examiner as "very forceful." Turner's codefendant kicked the victim once in the face, leaving a footprint. The jury also heard of the size and age differences between Turner and his codefendant and the victim, who was 57 and in relatively poor health at the time. Turner then fled the scene. Malice may be implied from an assault and battery with the hands or fists alone if evidence showing the character of the assault and the circumstances under which it was made "'signifies general malignant recklessness of others' lives and safety or disregard of social duty." *Keys v. State*, 104 Nev. 736, 738, 766 P.2d 270, 271 (1988) (quoting *Thedford v. Sheriff*, 86 Nev. 741, 744, 476 P.2d 25, 27 (1970)); *see also People v. Jones*, 186 N.E.2d 246, 249 (Ill. 1962) (citation omitted); *People v. Munn*, 3 P. 650, 652 (Cal. 1884). "[I]t is the function of the jury, not the appellate court, to weigh the evidence." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975). Accordingly, we conclude that "'after viewing the evidence in the light most favorable to the prosecution,'" a rational juror could have found the essential elements of the crime beyond a reasonable doubt under the alternative theories offered by the prosecution. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); NRS 200.010; NRS 200.030(2).

(ECF No. 13-25 at 2–3 (Order of Affirmance).)

///

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, a federal court collaterally reviewing a state court conviction for sufficiency of the evidence does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Payne*, 982 F.2d at 338. "[F]aced with a record of historical facts that supports conflicting inferences," the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). The Supreme Court has instructed that claims of insufficiency of the evidence "face a high bar in federal habeas proceedings . . .." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

Turner's claim that there was insufficient evidence at trial to support his second-degree murder conviction is meritless. Viewing the evidence in the light most favorable to the prosecution, there was ample evidence supporting Turner's conviction of second-degree murder—that is, ample evidence that Turner harbored the malice necessary for murder under Nevada law. (*See*, *e.g.*, ECF No. 12-10 at 27–35 (Transcript of Trial, September 7, 2011 (Clymer's testimony describing Turner and Ronald Hulsey acting jointly beating up Roberts)); *id.* at 53–54, 57, 147 (Clymer's testimony describing Turner striking Faircloth and knocking her down, and then Ronald Hulsey kicking her); *id.* at 156 (Clymer stating that he told the police that he saw Turner strike Faircloth); *id.* at 273 (Bailey's testimony that she heard a voice yelling, "You want to hit my sister?" and "Nigger-lover");ECF No. 12-11 at 119–20 (Transcript of Trial, September 8, 2011) (Merritt's testimony that Turner told her that he had beaten two people "to a pulp, to where

they had to call the EMTs, they had to resuscitate them and call the EMTs to be picked up").) The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Jackson*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented.

The Court will deny Turner habeas corpus relief on Grounds 2 and 1J(iv).

## M. Ground 3

In Ground 3, Turner claims that his federal constitutional rights were violated as a result of the cumulative effect of the errors he alleges. (*See* ECF No. 27 at 5, 10, 75–77 (Amended Petition).) As the Court determines that Turner has not shown there to have been any violation of his federal constitutional rights, there is no such error to be considered cumulatively, and the claim in Ground 3 fails. The Court will deny Turner habeas corpus relief on Ground 3.

## N. Ground 4

In Ground 4, Turner claims that he "is entitled to habeas relief for [the] reason [that] he is actually and/or factually innocent of the second-degree murder charge." (*See id.* at 6, 10, 78–82.)

In the order resolving Respondents' motion to dismiss, the Court ruled that this claim is subject to dismissal as procedurally defaulted unless Turner can show that a fundamental miscarriage of justice would result if it is not adjudicated on its merits. (*See* ECF No. 34 at 14–15 (Order filed August 20, 2018).) A federal court may consider a procedurally defaulted claim if the petitioner demonstrates that, otherwise, a fundamental miscarriage of justice would result. *See Coleman*, 501 U.S. at 750. To establish that a fundamental miscarriage of justice would result if a claim is not heard on the merits, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is a narrow exception, reserved for

extraordinary cases. *See Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). To demonstrate actual innocence to overcome a procedural bar, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "New" evidence is "relevant evidence that was either excluded or unavailable at trial." *Id.* at 327–28. Taking into account all the evidence, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 327); *see also Schlup*, 513 U.S. at 329 ("a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt"); *House v. Bell*, 547 U.S. 518, 538 (quoting *Schlup*, 513 U.S. at 327–28 (regarding evidence to be considered in making the determination)). "The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538. Meeting this standard "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error," warranting "a review of the merits of the constitutional claims[.]" *Schlup*, 513 U.S. at 317.

The new evidence Turner points to in support of his claim of actual innocence is the testimony of Jamie Hulsey at the state-court evidentiary hearing, an affidavit of Jamie Hulsey, and an affidavit of Ronald Hulsey. (*See* ECF No. 27 at 6, 10, 78–82 (Amended Petition); *see also* ECF No. 27-1 at 12–16 (Affidavit of Jamie Hulsey, Exh. 4 to Amended Petition); *id.* at 17–24 (Affidavit of Ronald Hulsey, Exh. 4 to Amended Petition); ECF No. 14-10 at 73–100) (Transcript of Evidentiary Hearing (Hulsey)).) This Court determines that, in view of the strong evidence of Turner's guilt presented at trial, this evidence is insufficient to establish Turner's actual innocence under *Schlup;* it is plain that had the versions of events recounted by Jamie and Ronald Hulsey been presented to the jury, a

40

1  reasonable juror could still have found Turner guilty of second-degree murder beyond a
2  reasonable doubt.

3      The Court will deny Turner's claim of actual innocence in Ground 4 as procedurally
4  defaulted.

5      **O.    Certificate of Appealability**

6      The standard for the issuance of a certificate of appealability requires a "substantial
7  showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court
8  has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the
> merits, the showing required to satisfy § 2253(c) is straightforward: The
> petitioner must demonstrate that reasonable jurists would find the district
> court's assessment of the constitutional claims debatable or wrong. The
> issue becomes somewhat more complicated where, as here, the district
> court dismisses the petition based on procedural grounds. We hold as
> follows: When the district court denies a habeas petition on procedural
> grounds without reaching the prisoner's underlying constitutional claim, a
> COA should issue when the prisoner shows, at least, that jurists of reason
> would find it debatable whether the petition states a valid claim of the denial
> of a constitutional right and that jurists of reason would find it debatable
> whether the district court was correct in its procedural ruling.

16  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074,
17  1077–79 (9th Cir. 2000).

18     Applying the standard articulated in *Slack*, the Court finds that a certificate of
19  appealability is unwarranted.

20     The denial of a certificate of appealability by this Court does not preclude Turner
21  from appealing and seeking a certificate of appealability from the Court of Appeals. To
22  appeal, Turner must file a timely notice of appeal in this Court.

23  **IV.   CONCLUSION**

24     It is therefore ordered that Petitioner's Amended Petition for Writ of Habeas Corpus
25  (ECF Nos. 27, 27-1) is denied.

26     It is further ordered that Petitioner is denied a certificate of appealability.

27  ///

28  ///

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly.

DATED THIS 24th day of February 2020.

_____
MIRANDA M. DU,
CHIEF UNITED STATES DISTRICT JUDGE